IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 06-00103-07-CR-W-ODS |
| ROY L. McMAHAN, JR., | ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION
## TO ACCEPT DEFENDANT'S GUILTY PLEA

On August 15, 2006, I held a change-of-plea hearing after this case was referred to me by United States District Judge Ortrie Smith. I find that Defendant's plea was voluntary and therefore recommend that it be accepted.

## I. BACKGROUND

On March 15, 2006, an indictment was returned, charging Defendant with: (1) conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; and (2) criminal forfeiture, pursuant to 21 U.S.C. § 853. Defendant was present, represented by appointed counsel Lisa Nouri. The government was represented by Assistant United States Attorney Kate Mahoney. The proceedings were recorded and a transcript of the hearing was filed on August 16, 2006.

## II. AUTHORITY OF THE COURT

The authority of federal magistrate judges to conduct proceedings is created and defined by the Magistrates Act, 28 U.S.C. § 636. Besides certain enumerated duties, the Act provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and

the laws of the United States." 28 U.S.C. § 636(b)(3).

The Eighth Circuit, following the reasoning of several other circuits, has held that magistrate judges may preside over allocutions and pleas in felony cases, so long as certain procedural safeguards are met. United States v. Torres, 258 F.3d 791, 795-96 (8th Cir. 2001); see also United States v. Dees, 125 F.3d 261 (5th Cir. 1997), United States v. Williams, 23 F.3d 629 (2d Cir. 1994). The reasoning applied by the appellate courts relies upon previous opinions by the United States Supreme Court that conducting jury *voir dire* falls within a magistrate judge's "additional duties" when the defendant has consented. See Torres, 258 F.3d at 795 (citing Peretz v. United States, 501 U.S. 923 (1991); Gomez v. United States, 490 U.S. 858 (1989)).

In Peretz, the Supreme Court held that when a defendant consents to a magistrate judge's involvement in *voir dire*, he waives any objection based on his right to have an Article III judge hear his felony case. 501 U.S. at 936. Moreover, the availability of *de novo* review by a district judge preserves the structural guarantees of Article III. Torres, 258 F.3d at 795. Applying the Peretz holding and adopting the reasoning of Williams, the Eighth Circuit held that the acceptance of guilty pleas bears adequate relationship to duties already assigned by the Magistrates Act in that "[a]n allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis." Id. (quoting Williams, 23 F.3d at 633). Plea allocutions are substantially similar to evidentiary proceedings explicitly assigned by the Act. Id. at 796 (citing Dees, 125 F.3d at 265). Even if taking a guilty plea were considered to be of greater importance than those duties already assigned, the consent of the defendant saves the delegation. Id. "Consent is the key." Id. (quoting Williams, 23 F.3d at 633).

The Torres court also addressed the implications of such a delegation for Article III's case

and controversy clause. Id. Because plea proceedings are submitted to the district court for approval, the court retains ultimate control over the proceedings and is not bound to accept a plea taken by a magistrate judge. Id. Moreover, the district court's *de novo* review of the plea proceedings contributes to the ministerial nature of the magistrate judge's role. Id.

Based on the above, I find that, with the consent of the defendant, the District Court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted.

### III. FINDINGS OF FACT

1. The parties consented to the delegation of the change of plea to the magistrate judge (Tr. at 2-3).

2. On March 15, 2006, an indictment was returned charging Defendant McMahan with (1) one count of conspiracy to distribute 500 grams or more of methamphetamine, in violation 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; and (2) criminal forfeiture, pursuant to 21 U.S.C. § 853 (Tr. at 4-5). The court read the charges against Defendant and Defendant indicated that he understood the nature of these charges (Tr. at 4-5).

3. The statutory penalty for conspiracy to distribute methamphetamine is not less than ten years but not more than life imprisonment, a fine of up to $4 million, a supervised release term of not less than 5 years, a $100 mandatory special assessment fee, and the potential for restitution (Tr. at 6).

4. Defendant was advised of the following:

   a. That he has a right to a trial by jury of at least 12 individuals and that their verdict must be unanimous (Tr. at 7-8);

3

b.  That he has the right to assistance of counsel throughout the trial (Tr. at 8);

c.  That Defendant is presumed innocent, and the government has the burden of coming forward to prove Defendant's guilt beyond a reasonable doubt (Tr. at 8-9);

d.  That Defendant's attorney would have the opportunity to cross-examine the government's witnesses (Tr. at 9);

e.  That Defendant has the right to testify but does not have to, and that the jury could not make an adverse inference from the fact that Defendant may not testify at trial (Tr. at 10-11);

f.  That Defendant has the right to subpoena witnesses to testify on his behalf (Tr. at 10); and

g.  That Defendant has the right to appeal any conviction to the Eighth Circuit Court of Appeals (Tr. at 11-12).

5.  Defendant was informed and understood that by pleading guilty, he was giving up all of the rights described above (Tr. at 12).

6.  Defendant was informed that during the change-of-plea proceeding, he would be placed under oath and questioned by counsel and the judge (Tr. at 12). Defendant was further informed that he must answer questions truthfully while under oath (Tr. at 12-13). Defendant stated that he understood (Tr. at 12-13).

7.  Government counsel stated that this has been an open file case (Tr. at 13). If this case were to be tried, the government's evidence would be that in 2005, Defendant was the legal owner

4

of the house located at 1807 Southwest 2nd Street in Lee's Summit, Missouri (Tr. at 13-14). On August 2, 2005, police served a search warrant at that address and recovered approximately 40 grams of methamphetamine, drug ledgers, and handguns (Tr. at 14). Police also arrested co-defendants Brandi Lasure and Christopher Dettlaff, who were tenants of the house (Tr. at 14). After the search was executed, Defendant was informed that there was evidence the tenants had been dealing drugs from the house and that he needed to evict them (Tr. at 14). Defendant told police that he would (Tr. at 14). There is also evidence that co-defendants Lasure and Dettlaff paid part of their rent with methamphetamine (Tr. at 15).

On November 30, 2005, police served another search warrant at the same address (Tr. at 14). Defendant still owned the house, and co-defendants Honesty Todd and Miguel Cervantes were the current tenants (Tr. at 14, 15). Defendant and co-defendant Todd were present in the house at the time of the search (Tr. at 14). Police recovered four handguns, 43 grams of methamphetamine (actual), $16,675.00 in genuine United States currency, and some counterfeit currency (Tr. at 14). Co-defendant Cervantes was arrested driving up to the residence (Tr. at 14). Defendant was also arrested, questioned, and admitted that he had purchased methamphetamine from co-defendants Lasure and Dettlaff approximately fifty times (Tr. at 14). He explained that he bought the methamphetamine to help out friends (Tr. at 14). Defendant stated his friends would give him money, he took the money to co-defendants Lasure and Dettlaff, obtained the methamphetamine, and distributed it to his friends (Tr. at 14). Defendant estimated he bought in quantities of 1.75 grams approximately fifty times, each time paying approximately $125.00 to $130.00 (Tr. at 14-15).

8. Defense counsel stated that she had reviewed the government's file and confirmed from her own independent investigation that it was wise for her client to plead guilty (Tr. at 13).

5

9. Defendant admitted that between January 1, 2004, and February 27, 2006, he knew co-defendants Lasure and Dettlaff (Tr. at 16). Defendant stated he had a usage problem, bought methamphetamine from co-defendant Lasure, and shared it with his friends (Tr. at 17). Defendant knew that co-defendant Lasure was providing methamphetamine to him and considered it reasonably foreseeable that he was not the only person to whom she supplied methamphetamine (Tr. at 17). Defendant had also obtained methamphetamine from co-defendant Dettlaff and, similarly, considered it reasonably foreseeable that he was not the only person to whom co-defendant Dettlaff supplied methamphetamine (Tr. at 17-18). Even though Defendant may not have known who co-defendants Lasure and Dettlaff's other customers were, Defendant obtained methamphetamine from co-defendants Lasure and Dettlaff at 1807 Southwest 2nd Street in Lee's Summit, Missouri (Tr. at 18, 21). Defendant personally consumed some of the methamphetamine and also provided some to friends without charge at other locations (Tr. at 18, 21-22).

Defendant understood, legally speaking, that by receiving the methamphetamine and then providing it to third parties, he was guilty of conspiracy to distribute methamphetamine (Tr. at 18). He did not know the extent of the conspiracy because he chose not to know what was going on (Tr. at 19). However, Defendant did not dispute that he personally purchased 50 grams or more of methamphetamine during the relevant period of time (Tr. at 20).

Finally, Defendant's mother purchased the residence located at 1807 Southwest 2nd Street in Lee's Summit, Missouri (Tr. at 23). She quit claimed the property to Defendant so that he could establish credit (Tr. at 23). After the two search warrants were executed on the residence, Defendant quit claimed it back to his mother (Tr. at 22).

10. Defendant stated that he had reviewed the plea agreement with his attorney and

6

Case 4:06-cr-00103-ODS    Document 126    Filed 08/18/06    Page 6 of 9

understood the terms of the agreement (Tr. at 24). The totality of Defendant's agreement with the government is contained in the plea agreement (Tr. at 24). Defendant understood that, pursuant to the agreement, the government reduced the charge against him to conspiracy to distribute 50 grams of methamphetamine (Tr. at 25). According to this reduced charge, Defendant faces potential penalties of not less than five years but not more than forty years imprisonment, a fine of up to $2 million, not less than four years supervised release, a mandatory $100 special assessment fee, and the potential for restitution (Tr. at 6-7). Defendant understood the district judge is not bound by the sentencing recommendation contained in the plea agreement and that Defendant could not withdraw his guilty plea of if he is not pleased with the sentence he receives (Tr. at 26-27). Defendant also understood that, pursuant to the plea agreement, he agreed to forfeit all of his interest in the property located at 1807 Southwest 2nd Street, Lee's Summit, Missouri; the agreement did not affect any potential interest Defendant's mother may have in the property (Tr. at 27). Under the agreement, Defendant also agreed to assist the government in finding substitute assets (Tr. at 28). Finally, Defendant agreed with the portion of the plea agreement that stated he transferred title to the subject property to his mother on March 6, 2006, by a quit claim deed (Tr. at 29-30).

11. No one has made any threats or any other promises in order to get Defendant to plead guilty (Tr. at 30-31).

12. Defendant is satisfied with the representation he has received from Ms. Nouri (Tr. at 31). There is nothing she has done that Defendant did not want her to do, and there is nothing Defendant wanted her to do that she has not done (Tr. at 31).

13. Defendant is 52 years old (Tr. at 31). He completed the eleventh grade and later obtained a GED (Tr. at 31). Defendant has no physical or mental health concerns that would prevent

him from entering an intelligent and voluntary plea of guilty to these charges (Tr. at 31-32). Defendant was not under the influence of drugs or anything else that would cloud his ability to intelligently waive his right to a jury trial (Tr. at 32).

14. Defendant tendered a plea of guilty to the crime charged in Counts One and Twelve of the indictment (Tr. at 33).

15. The parties waived the ten-day objection period to the Report and Recommendation (Tr. at 34).

## V.  ELEMENTS OF THE CHARGED OFFENSE

The elements necessary to sustain a conviction for conspiracy to distribute methamphetamine include: (1) an agreement to distribute methamphetamine; (2) the defendant knew of the agreement; and (3) the defendant intentionally joined the conspiracy. United States v. Savatdy, 452 F.3d 974, 977 (8th Cir. 2006).

## V.  CONCLUSION

Based on the above, I make the following conclusions:

1. The district court may lawfully refer this case to a magistrate judge for issuance of a report and recommendation on whether Defendant's guilty plea should be accepted.

2. Defendant has consented to having his plea taken by a magistrate judge.

3. Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of the crime charged in Counts One and Twelve of this indictment.

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order accepting Defendant's guilty plea and adjudging Defendant guilty of

the offenses charged.

					/s/ Robert E. Larsen
					ROBERT E. LARSEN
					United States Magistrate Judge

Kansas City, Missouri
August 18, 2006